Ruffin, C. J.
 

 The admitted fact's that the debts for which J. B. Littlejohn, John Nuttall and Willis Lewis were respectively sureties for T. B. Littlejohn,- have been paid many years past, require the court to put all the deeds of October 30, 1827, out of the plaintiff’s way, except so far as one of those to John Nuttall may be supported, as á security for the balance that may be due from T. B. Littlejohn to his .brother on their partnership dealings. So the deed to Thomas B. Lewis, dated 29th of February, 183G, for the indemnity of Venable, as surety for the debt to John R. Hicks, and not registered until the 18th of May, 1840, must likewise be declared not to be an effectual incumbrance on the slaves mentioned therein, for- the want of due registration. The act of 1-820, expressly enacts, that a deed of trust, not proved and' registered within six months, shall, as against a creditor, be held utterly void, and the circumstance of the registration before the plaintiff got his judgment and execution, makes no difference, as notice of a deed of trust not duly registered raises no equity against a creditor.
 
 Davidson
 
 v
 
 Cowan,
 
 1 Dev. Eq. 470. The case is, therefore, narrowed down to the questions that can be made upon the deedof-
 
 *506
 
 Octobor 30, 1827, as a security for the partnership balances, and the deed of the 29th July, 1840, as a valid security for the debts mentioned in it. As far as the object of the bill is to ¡lave those deeds declared void, as having been made with a fraudulent intent towards creditors, the court must hold the bill unsupported. As to the first deed, it is to be remarked, that the circumstance of the security being given by one brother to another for an unknown-balance of accounts, represented to be large as the parties believed, and the further circumstance that there was no attempt to settle and ascertain the balance for so long a period as thirteen years, during which time the alleged debtor continued to enjoy the estates conveyed, certainly furnished grounds for suspicion of the fairness of the claim and of the deed made to secure it, and well justified the plaintiff, as a creditor likely to be defeated by the deed, to call the parties to an explanation upon their oaths. But those circumstances are not absolutely conclusive of fraud, either as evidence that there was no debt owing, or that the parties intended to deceive the world by the possession being so long with the debtor. For a credit- or
 
 may
 
 honestly obtain a security for a debt,.known or believed to exist, though unliquidated} and a preference thus gained by one creditor over another for what may turn out to be due, is not unfair. So mere delay, either in settling or collecting the debt, will not, of itself, impeach the deed, since forbearance
 
 may
 
 «rise from many motives besides that of giving a false credit to a debtor, and in many instances may be-attributed to the most benevolent and-praiseworthy motives. In the case before us, the answers of both the parties, T. B. Littlejohn and J. B. Littlejohn, satisfactorily and fully repel, if to be credited, all those imputations of fraud. They establish, although the debt is not specified in the deed by its amount, that it in fact existed, and exceeded the value of all the property conveyed to secure it. They account for the debt not being ascertained at the time by the state of the business of the firms, and for the subsequent procrastination by the separation of the parties by distant residences,
 
 *507
 
 by their fraternal confidence, and the natural unwillingness of the creditor to distress the debtor. It furthermore is seen, that all the property conveyed, (except the slave, who died long ago) was land, of which the possession merely is not evidence of title, and of the conveyance of which notice was given to creditors by doe registration. Those statements of the answers must be received as true' by the court, as the case stands, for, in all respects, they are directly responsive to the allegations of the bill, and are in no respect contradicted, even by a single witness. Upon the face of the pleadings, therefore, this deed cannot be declared to have been made with a fraudulent intent to deceive creditors, nor to have been kept on foot for that purpose after the payment of all the debts intended to be secured thereby; but it must be declared to be still a valid security for such sum as may be really owing from T. B. Littlejohn to his brother on their copartnerships. With respect to the last deed, dated July 29, 1840, the court is led to the like conclusion, much for reasons of the same kind. The answers, being responsive to charges in the bill, are evidence for the defendants, while tmcontradicted. They prove the justice of all the debts mentioned in the deed. In truth the bill does not particularly question any one of them, except those to Brown and the alleged misapplications of money in the Master’s office. As to each of them, the answer .of Thomas B. Littlejohn is precise and positive. So is that of Tenable .in respect to the debt to Brown, .with the collection of which he was charged, and for the security of which, with the other debts, he was active in getting the deed in question executed. No one but Littlejohn himself could answer directly to the conversion of the funds in his office, either as to the time or the amount, and he has given an explicit and positive statement as to both, in which the sureties, Tenable and Downey, could only concur, to the extent of their belief; and to that extent they do fully concur. Assuming the defaults to have occurred, and the other debts to exist, as being thus established, the court does not perceive any sufficient ground for impeaching the deed.
 

 
 *508
 
 There were, however, some objections stated in the argument, which it is proper to notice.
 

 ^ 'vas sa'd, ^at as a Provision for an indemnity to the sureties i$ the official bond, it was against good morals and public policy, especially as it includes future as well as past breaches of duty. But we think there is no force in the argument. We see no reason why a person, who is entering into a bond as surety for the faithful performance by an officer of his public duties, may not provide, in any manner he can, for his counter security. The principal contracts at the time to repay to the surety any money the latter may be compelled to pay for him, and, therefore, he may superadd thereto any further or collateral security. If this may be done when the obligation is contracted, it must be competent to do so, whenever the party apprehends danger, and, certainly, when an acknowledged
 
 default has happened.
 

 I was likewise said, that as some of the property conveyed, as the crops, were perishable, and consumed in the use, and as the possession was to be retained by the debtor, the deed is thereby shewn to be fraudulent, as appearing to be made for the ease or favor of the debtor.
 

 If it so appeared, we should no.t hesitate to pronounce the deed fraudulent. But the intent to secure any benefit, ease or favor to the debtor, is peremptorily denied, and we do not think those provisions in the deed, when considered with other parts of it, do establish such an intent. The possession was to be kept by Littlejohn no longer than the property was required for the stirpose of a sale, and as to the period or terms of making the sale he has no voice, but they are to be determined by the creditors at their will.
 

 It is true, that some of the crops might be consumed before the sale; but even that might be for the benefit of the creditors, as keeping the property together until the crops growing when the deed was made in July, would mature and be gathered, and have had in view rather the convenience of the trustee than favor to the debtor. We need not,
 
 *509
 
 however, farther consider the point at present, since our views are fully expressed on it in
 
 Moore
 
 v Collins, 3 Dev. 137, and have been more recently repeated in
 
 Cannon
 
 v Peebles, 2 Jred. 449. If the sale had been delayed so long, or if the proportion, in point of value, of the consumable articles over those of a different character, was such as-to induce the court to believe, that it was the object, or an object of the deed to provide for Littlejohn permanently or temporarily, and not for his creditors, it would be the duty of the court to pronounce the deed void. But it is seldom practicable, and seldom prudent, to have an immediate sale under such assignments ; and until a sale, if to be -in a reasonable time, as fixed in the deed, or to be fixed by the trustee or creditors, it is more convenient to all parlies, that the possession should not be changed. We must presume the creditors will be governed by their own interest and not Little-john’s ease, until the contrary appears, and, especially, when any view to his benefit is so positively denied. The court must therefore declare, that the plaintiff has not established the allegation in his will, that the deed of July 29th, 1840, to John R. Hicks, was fraudulent, and, consequently, it is supported as a valid deed and security for such sums and debts as may remain due to the several creditors or sureties therein provided for. But should the plaintiff think proper to proceed no further in Lis suit, and to dismiss his bill upon the declarations thus made, he may do so without costs, for in the opinion of -the cou.rt, he had a right, under the circumstances, to call fora discovery upon most of the points on which he asked-it. The case however is one, on which the plaintiff, supposing those two deeds to be fair, and subsisting securities, has a right to relief by having the encumbrances cleared from the property, and to that end, to have such enquiries and accounts taken as will ascertain the sums -really due on the claims provided for, so that they may be raised out of the property, if sufficient, and the plaintiff get satisfaction out of the surplus if any. Therefore, the plaintiff is allowed to have such .enquiries upon any or all.of
 
 *510
 
 those debts, as he may choose, but if they should result against him, they will probably be made at his cost.
 

 The plaintiff declined to have the proposed enquiries made.
 

 Per Curiam. Bill dismissed, but without costs.